**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **JOSHUA CAMPBELL,** | : | |
| 18 Summerplace Drive | : | |
| Wapakoneta, OH 45895 | : | |
| | : | Case No. 3:24-cv-1916 |
| and | : | |
| | : | JUDGE |
| **MEISHA OSORIO** | : | |
| 708 W. Plum Street | : | MAGISTRATE JUDGE |
| Wapakoneta, OH 45895 | : | |
| | : | |
| and | : | |
| | : | **Jury Demand Endorsed Hereon** |
| **CRYSTAL HEGEMIER** | : | |
| 815 Franklin Street | : | |
| Lima, OH 45804 | : | |
| | : | |
| and | : | |
| | : | |
| **A.M.,** a minor, | : | |
| c/o Crystal Hegemier | : | |
| 815 Franklin Street | : | |
| Lima, OH 45804 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| **COMMUNITY PROPERTY GROUP** | : | |
| **WAPAK, LTD**. | : | |
| **d/b/a** | : | |
| **NORMANDY RIDGE APARTMENTS** | : | |
| c/o Douglas P. Larger | : | |
| 351 Industrial Drive | : | |
| Minster, OH 45865 | : | |
| | : | |
| and | : | |
| | : | |
| **BROOKSTONE MANAGEMENT** | : | |
| **GROUP LTD.** | : | |
| c/o Douglas P. Larger | : | |
| 351 Industrial Drive | : | |
| Minster, OH 45865 | : | |

and                                       :
                                          :
**DOUGLAS P. LARGER**                     :
351 Industrial Drive                      :
Minster, OH 45865                         :
                                          :
and                                       :
                                          :
**JENNIFER STUEVE**                       :
4621 Wuebker Road                         :
Minster, OH 45865                         :
                                          :
and                                       :
                                          :
**MANDI MUELLER**                         :
351 Industrial Drive                      :
Minster, OH 45865                         :
                                          :
                                          :
            Defendants.                   :

## COMPLAINT

NOW COME Plaintiffs Joshua Campbell, Meisha Osorio, Crystal Hegemier, and A.M., (sometimes referred to collectively herein as "Plaintiffs") and proffer this Complaint for damages against Defendant Community Property Group Wapak, LTD d/b/a Normandy Ridge Apartments ("Defendant Normandy Ridge"), Defendant Brookstone Management Group Ltd. ("Defendant Brookstone"), Douglas P. Larger ("Defendant Larger"), Defendant Jennifer Stueve ("Defendant Stueve"), and Mandi Mueller ("Defendant Mueller") (sometimes referred to herein as "Defendants").

## JURISDICTION AND VENUE

1.      This action is brought pursuant to the Fair Housing Act (the "FHA" or "Fair Housing Act"), 42 U.S.C. §§ 3601, *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq., the Ohio Minimum Fair Wage Standards Act ("OMWFSA"), Ohio Revised Code Chapter 4111, *et seq.*, the Ohio Constitution, Oh. Const. Art. II, §34a, and the common law.

2

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction of Plaintiffs' claims arising under the law of the United States.

3. This Court has jurisdiction over Plaintiffs' claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiffs entered into employment and tenant relationships with Defendants in the Northern District of Ohio, the subject property where the events giving rise to the claims described herein sits in the Northern District of Ohio, Auglaize County, and Defendants are doing and have done substantial business in the Northern District of Ohio.

## THE PARTIES

5. Plaintiff Joshua Campbell is an individual, a United States citizen, and a resident of the State of Ohio. Mr. Campbell resides in Auglaize County, Ohio.

6. Plaintiff Meisha Osorio is an individual, a United States citizen, and a resident of the State of Ohio. Ms. Osorio resides in Auglaize County, Ohio.

7. Plaintiff Crystal Hegemier is an individual, a United States citizen, and a resident of the State of Ohio. Ms. Hegemier resides in Allen County, Ohio.

8. Plaintiff A.M. is a minor, an individual, a United States citizen, and a resident of the State of Ohio. A.M. resides in Allen County, Ohio. Ms. Hegemier is A.M.'s mother and legal guardian.

9. Defendant Community Property Group Wapak, Ltd. d/b/a Normandy Ridge Apartments is an Ohio limited liability company registered to do business in Ohio, and is conducting business in Auglaize County in the Northern District of Ohio. Defendant Normandy

Ridge owns Normandy Ridge Apartments, located at 402 Ashland Avenue, Wapakoneta, Ohio, 45895.

10.     Defendant Brookstone Management Group, Ltd. d/b/a Normandy Ridge Apartments is an Ohio limited liability company registered to do business in Ohio, and is conducting business in Auglaize County in the Northern District of Ohio.  Defendant Brookstone manages Normandy Ridge Apartments, located at 402 Ashland Avenue, Wapakoneta, Ohio, 45895.

11.     Defendant Douglas P. Larger is an individual, a United States citizen, and a resident of the state of Ohio.  Defendant Larger is an owner of Normandy Ridge Apartments and manages the property.

12.     Defendant Jennifer Stueve is an individual, a United States citizen, and a resident of the state of Ohio.  Defendant Stueve manages or did manage the Normandy Ridge Apartments during the relevant period herein.

13.     Defendant Mandi Mueller is an individual, a United States citizen, and a resident of the state of Ohio.  Defendant Mueller manages the Normandy Ridge Apartments.

14.     At all relevant times, Defendant Normandy Ridge, Defendant Brookstone, Defendant Stueve, and Defendant Larger owned at least four residential rental properties, including the 84-unit complex described herein as Normandy Ridge Apartments, participated as principal in three or more transactions involving the sale or rental of any dwelling or any interest therein, are otherwise in the business of selling or renting "dwellings," and are otherwise covered by and subject to the Fair Housing Act, 42 U.S.C. §3601 *et seq.*

15.     The units at Normandy Ridge Apartments are considered "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. §3602(b).

16. At all relevant times herein, Plaintiff Campbell was an "employee" as that term defined by the FLSA and OMFWSA.

17. At all relevant times herein, Plaintiff Osorio was an "employee" as that term defined by the FLSA and OMFWSA.

18. At all relevant times herein, all Plaintiffs were "aggrieved persons" as that term is defined by the FHA.

19. At all relevant times herein, Defendant Normandy Ridge was an "employer" as that term is defined by the FLSA and OMFWSA and O.R.C. Chapter 4111.

20. At all relevant times herein, Defendant Larger was an "employer" as that term is defined by the FLSA, and was and is responsible for Defendant Normandy Ridge's business operations, including payroll policies and procedures.

21. At all times relevant to this action, Defendant Normandy Ridge and Defendant Larger have been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

22. Upon information and belief, Defendant Normandy Ridge and Defendant Larger's employees were engaged in interstate commerce and Defendant Normandy Ridge and Defendant Larger have an annual gross volume sales and/or business in an amount not less than $500,000.00.

## **FACTUAL BACKGROUND**

23. Defendants own, operate, and manage an 84-unit apartment complex known as Normandy Ridge Apartments, located at 402 Ashland Avenue, Wapakoneta, Ohio 45895.

5

24. The complex is comprised of 7 buildings, lettered "A" through "G," and each building contains 12 apartment units.

25. Plaintiff Josh Campbell was a tenant in Building G, Apartment 6. Mr. Campbell resided in this unit from approximately May 2018 to approximately March 2023.

26. Plaintiff Meisha Osorio was a tenant in Building G, Apartment 2. Ms. Osorio resided in this unit from approximately February 2019 to March 2023.

27. Plaintiff Crystal Hegemier was a tenant in Building C, Apartment 11. Ms. Hegemier resided in this unit from approximately the end of 2018 to spring of 2023.

28. A.M. was a tenant in Building C, Apartment 11. A.M. resided in this unit from approximately the end of 2018 to spring of 2023.

29. In or around June 2022, Mr. Campbell was approached by Defendant Larger and asked to work for Normandy Ridge Apartments. Mr. Campbell did odds and ends jobs around the complex such as cleaning, handiwork, repair work, painting, moving large trash items, working with tenants, and other tasks.

30. Mr. Campbell was paid $10 per hour, which was applied as a credit toward his rent. If Mr. Campbell's hours exceeded his monthly rent, he was provided a check for the difference.

31. In or around August 2022, Ms. Osorio was approached by Jennifer Stueve and Doug Larger and asked to work for Normandy Ridge Apartments. Ms. Osorio assisted Defendant Stueve with the management of the property. For instance, Ms. Osorio assisted with book-keeping, accounting, potential tenant information intake, drafting leases, verifying identification and income information of tenants, and other tasks. Ms. Osorio would occasionally help Mr. Campbell as well.

32. Ms. Osorio was paid $12 per hour, which was applied as a credit toward her rent. If Ms. Osorio's hours exceeded her monthly rent, she was provided a check for the difference.

33. Mr. Campbell and Ms. Osorio were known at the Normandy Ridge Apartments as employees of Normandy Ridge Apartments.

34. As a result, Mr. Campbell and Ms. Osorio were always "on-call" and received constant phone calls, text messages, and verbal requests to address various issues from tenants of Normandy Ridge Apartments.

35. At first, Mr. Campbell and Ms. Osorio turned in hard-copy timesheets with the hours they worked for Normandy Ridge Apartments, including time spent after normal business hours addressing various tenant issues, as they were authorized to do.

36. When Ms. Stueve and Mr. Larger received timesheets with "after hours" work, they told Ms. Osorio and Mr. Campbell to stop reporting the time they spent working after normal business hours.

37. Ms. Stueve and Mr. Larger discouraged and prevented Ms. Osorio and Mr. Campbell from reporting the hours they worked.

38. Ms. Osorio and Mr. Campbell spent approximately 5-10 hours per week performing "after hours" work.

39. Because they were not paid for such "after hours" work, Ms. Osorio and Mr. Campbell were not paid the minimum wage for all hours worked in a workweek.

***Defendants' Migrant Tenant Population***

40. The tenancy at Normandy Ridge Apartments is comprised of approximately 25-30% of Spanish-speaking migrants.

41. The migrant tenant population speaks very little English.

7

42. Defendants do not have a translator on site.

43. Defendants are only able to communicate with the migrant tenant population if another tenant is around, and happens to speak Spanish. This is rare, and virtually never the case.

44. Defendants do not verify the identification or citizenship status of the migrants prior to admitting them as tenants at Normandy Ridge Apartments.

45. The migrant tenants routinely present one person with proper identification and citizenship status to Defendants to obtain tenancy, and then move up to six or more migrants into one- or two-bedroom apartments.

46. The person with proper identification and citizenship status then disappears.

47. During her employment and tenancy at Normandy Ridge Apartments, Ms. Osorio was instructed by Defendant Larger and Defendant Stueve to allow the migrants to obtain tenancy and a lease under the auspice of one person, and to look the other way when it was clear that the one person with proper identification and citizenship status did not live in the unit.

### *Sexual Harassment of A.M.*

48. The migrant tenants are serial sexual harassers.

49. It is well-known within Normandy Ridge Apartments to stay away from the migrant tenants because of their aggressive sexual behavior and Defendants' lack of enforcement of rules or discipline.

50. During A.M.'s tenancy at Normandy Ridge Apartments, she was sexually harassed three to four times a week every week for approximately one year.

51. A.M. was 13 and 14 years old during the period in question.

52. The sexual harassment included being cat-called and whistled at every time A.M. entered or exited her apartment.

53. A.M. remembers being followed toward her apartment building and watched while walking up the steps so the migrants could get a good look at her backside.

54. The migrants would come out on their balcony on days and times they knew A.M. would be getting dropped off to make sure they were able to ogle at and engage in the sexual harassment of A.M., a minor child.

55. It did not matter if A.M. was with an adult or not. Normandy Ridge's migrants sexually harassed A.M. in front of her grandmother, grandfather, and mom.

56. The migrant tenants were repeatedly told throughout A.M.'s tenancy to stop.

57. A.M.'s mom, Ms. Hegemier, repeatedly reported the behavior to Defendant Stueve and Defendant Larger.

58. Defendants ignored Ms. Hegemier's reports.

59. A.M. was told that migrant tenants had attempted to pull another minor into a van, in an apparent abduction or rape attempt.

60. A.M. told her mom that she was scared to go outside of the home because of the frequency and severity of the sexual harassment.

61. A.M. reported living every day at Normandy Ridge Apartments with uncertainty and anxiety about what might happen to her next, especially if she were alone outside the apartment or not in the presence of an adult.

62. A.M., through her mother Ms. Hegemier, reported the sexual harassment to Plaintiff Josh Campbell as explained in further detail below.

*Josh Campbell's Reports of Sexual Harassment of Minor Children to Defendants*

63.     In or around November 2022, Mr. Campbell was in the parking lot of Normandy Ridge Apartments when a tenant, J.D.[1], approached him, screaming and yelling.

64.     J.D. told Mr. Campbell that her daughters, aged approximately 5 and 13 years old at the time, were being sexually harassed by Normandy Ridge's migrant tenants.

65.     She reported to Mr. Campbell that it had happened several times previously, but that this time, the migrant tenants had attempted to lure her 5 year old daughter into a vehicle.

66.     She told Mr. Campbell that the sexual harassment needed to be addressed by Defendants, or she would be forced to take matters into her own hands.

67.     Upon information and believe, J.D. reported these incidents to Defendants.

68.     Mr. Campbell immediately went to the management office, and reported what J.D. had told him to Defendant Stueve.  Defendant Stueve said she would handle it.

69.     Following his initial verbal report to Defendant Stueve, and a short time later, Mr. Campbell was approached by Ms. Hegemier, who reported that her daughter, A.M, had also been sexually harassed.

70.     Ms. Hegemier reported to Mr. Campbell that the sexual harassment occurred frequently, and any time her daughter was outside coming into the apartment, or any time she was outside leaving the apartment.

71.     Mr. Campbell immediately reported this to Defendant Stueve.  Defendant Stueve stated again that she would handle it.

---

[1] The witness's identity is not being disclosed for confidentiality purposes and due to the sensitive nature of the allegations.

72.     Approximately one week later, J.D. and Ms. Hegemier again reported to Mr. Campbell that their daughters were being sexually harassed, and that Defendants had taken no action to stop the behavior.

73.     Mr. Campbell decided to interview J.D. and Ms. Hegemier's daughters, including, A.M., and draft "victim" or "impact" statements regarding the sexual harassment they had experienced.

74.     Mr. Campbell and Plaintiffs were hopeful this would prompt some action from Defendants.

75.     Mr. Campbell did so, and provided the reports to Defendant Stueve.

76.     Mr. Campbell also reported the behavior to Defendant Larger.

77.     Following the submission of the statements, Mr. Campbell continued to follow up with Defendant Stueve and Defendant Larger about the complaints of sexual harassment.

78.     Defendants refused and failed to take any action to stop and prevent the sexual harassment.

79.     Following the complaints and follow ups, Defendants began a campaign of retaliation against Mr. Campbell, Ms. Osorio, Ms. Hegemier, and A.M.

80.     The retaliation, included but was not limited to:

   a.     Defendants increased Plaintiffs rent. As an example, Mr. Campbell's rent was increased by almost 10% following his reports of sexual harassment.

   b.     Defendants reduced Mr. Campbell's scheduled employment hours, replaced Mr. Campbell, and terminated Mr. Campbell's and Ms. Osorio's employment.

   c.     Defendant Mueller, employee of Normandy Ridge Apartments, began telling other tenants that Mr. Campbell was a "woman-beater," drug addict, and abused his children.

   d.     A tenant told Mr. Campbell that she had heard Defendant Stueve tell children living in the complex to stay away from Mr. Campbell and his seven year

son. Later, a group of children asked Mr. Campbell why Defendant Stueve told them not to play with Mr. Campbell's son and to stay away from them.

e.     Defendants called the police on Ms. Hegemier.

f.     Defendants attempted to tow Ms. Hegemier's car.

g.     When Ms. Hegemier complained, Defendant Stueve told Ms. Hegemier that if she did not like what was happening, she could vacate her unit.

h.     Defendants began making excuses not to pay Ms. Osorio for the hours she worked, withheld her pay, would deduct hours she worked from the credit to her rent, withheld her security deposit, and made improper deductions from her security deposit.

81.     Ms. Hegemier and A.M. moved out of Normandy Ridge Apartments due to the retaliation and harassment they received for reporting A.M. being sexually harassed and for the lack of safety at Normandy Ridge Apartments.

82.     Ms. Osorio moved out of Normandy Ridge Apartments due to the retaliation and harassment she received for reporting A.M. and other minors being sexually harassed, and for the lack of safety at Normandy Ridge Apartments.

83.     On or about March 15, 2023, Defendants issued Mr. Campbell a 30-day notice to vacate, despite the fact that he was current on rent.

84.     Mr. Campbell was vacated from Normandy Ridge Apartments due to his complaints of sexual harassment to minor children.

85.     Plaintiffs incurred moving expenses, storage fees, loss of wages, loss of security deposits, mental anguish and emotional distress, and other economic and non-economic damages from Defendants' conduct.

86.     Mr. Campbell has filed a charge of discrimination with the Ohio Civil Rights Commission in regard to his employment with Defendants and intends to amend this complaint to add employment claims once he receives his right to sue.

## COUNT I
**(FLSA 29 U.S.C. §201, et seq. – Failure to Pay Minimum Wage)**
**(Brought by Plaintiffs Josh Campbell and Meisha Osorio Against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

87.     All of the preceding paragraphs are realleged as if fully rewritten herein.

88.     Defendants violated the FLSA, 29 U.S.C. § 206(a), by not paying Plaintiffs minimum wage for all hours worked.

89.     Defendants knew or should have known of the minimum wage payment requirement of the FLSA.

90.     Plaintiffs are not exempt from the provisions of the FLSA, and Defendants knew or should have known that Plaintiffs were entitled to be paid no less than the minimum wage payment for all hours worked.

91.     Defendants knowingly and willfully failed to properly pay Plaintiffs when Defendants failed to compensate Plaintiffs for all hours worked while they were employed by Defendants.

92.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages and are entitled to recover unpaid wages, interest, attorneys' fees and costs, punitive damages, and all other remedies available under the FLSA.

## COUNT II
**(Ohio Constitution §34a/OMFWSA R.C. 4111.02 – Failure to Pay Minimum Wage)**
**(Brought by Plaintiffs Josh Campbell and Meisha Osorio Against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

93.     All of the preceding paragraphs are realleged as if fully rewritten herein.

94.     Defendants have violated the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code, Chapter 4111 *et seq.* and Section 34a of the Ohio Constitution by not paying Plaintiffs the minimum wage for all hours worked.

95. Defendants' knowing failure to properly pay Plaintiffs was a violation of Ohio Revised Code Chapter 4111, et seq. and Section 34a of the Ohio Constitution.

96. For Defendants' violation of O.R.C. 4111 and Section 34a of the Ohio Constitution, Plaintiffs are entitled to recover unpaid wages, an additional two times the amount of the unpaid wages, attorneys' fees and costs, and all other remedies available under Ohio law.

## COUNT III
**(Fair Housing Act, 42 U.S.C. §3601 *et seq* - Hostile Environment & Sexual Harassment)**
**(Brought by Plaintiff A.M. Against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

97. All of the preceding paragraphs are realleged as if fully rewritten herein.

98. Plaintiff A.M. is a member of a class protected from discrimination on the basis of her sex.

99. Plaintiff was subjected to unwelcomed verbal and physical harassment from Defendants', including through Defendants' tenants and agents, because of her sex.

100. The unwelcomed verbal harassment was of a sexual nature.

101. The unwelcomed sexual harassment, which offended Plaintiff and interfered with her ability to live as a resident in her home, was sufficiently severe and/or pervasive to create a hostile environment in violation of federal law.

102. Defendants knew or should have known of the hostile environment to which Plaintiff was exposed but failed to take reasonable action to prevent and/or stop the offensive conduct.

103. Defendants had the power and ability to prevent and/or or stop the offensive conduct, but failed to do so.

104. As a direct and proximate result of Defendants' conduct, Plaintiff, A.M., has suffered and will continue to suffer economic and non-economic damages, including but not

14

limited to serious emotional distress, and the loss of shelter, benefits and other terms, privileges and conditions of her residency for which Defendants are liable.

105. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages, and Plaintiff, A.M.'s reasonable attorney fees, and costs.

106. By the actions and statements described above, Defendants have:

a. Denied housing or otherwise made housing unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

c. Made statements with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c); and

d. Coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

## COUNT IV
**(Fair Housing Act, 42 U.S.C. §3601 *et seq* - Quid Quo Pro & Sexual Harassment)**
**(Brought by Plaintiff A.M. Against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

107. All of the preceding paragraphs are realleged as if fully rewritten herein.

108. Plaintiff, A.M., is a member of a class protected from discrimination on the basis of sex.

109.     Plaintiff  A.M. was subjected to unwelcomed sexual harassment in the form of sexual advances and/or requests for sexual favors from tenants over which Defendants had control.

110.     The unwelcomed sexual advances were based on Plaintiff A.M.'s sex.

111.     Plaintiff A.M.'s submission to or endurance of the unwelcomed advances was an implied condition for receiving housing, and/or Plaintiff A.M.'s refusal to submit to the sexual advances resulted in a tangible detriment.

112.     Plaintiff A.M.'s requirement that she submit to Defendants', through its tenants and agents, sexual advances as a condition of her continued tenancy resulted in her constructive eviction.

113.     Defendants knew or should have known of its and its tenants' actions, but failed to take reasonable action to prevent and/or stop the offensive conduct.

114.     As a direct and proximate result of Defendants' conduct, Plaintiff A.M. has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress, and the loss of shelter, benefits and other terms, privileges and conditions of her residency for which Defendants are liable.

115.     Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages, and Plaintiff A.M.'s reasonable attorney fees, and costs.

116.     By the actions and statements described above, Defendants have:

a. Denied housing or otherwise made housing unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

16

b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

c. Made statements with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c); and

d. Coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

## COUNT V
**(Fair Housing Act, 42 U.S.C. §3601 *et seq* – Retaliation)**
**(Brought by Plaintiffs Josh Campbell, Meisha Osorio, Crystal Hegemier, & A.M. Against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

117. All of the preceding paragraphs are realleged as if fully rewritten herein.

118. Plaintiffs engaged in protected activities when they reported the unwelcomed verbal and physical sexually-based harassment and unwelcomed sexual advances of Defendants' tenants, including toward minor children.

119. Defendants knew Plaintiffs engaged in a protected activity.

120. Shortly after Plaintiffs engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiffs by increasing their rent, disparaging them, calling the police on them, threatening them, coercing them, harassing them, reducing their hours worked, replacing them, terminating their employment, constructively terminating their employment, constructively evicting them and/or by otherwise discriminating against Plaintiffs in the terms, privileges and conditions of their residency.

121. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress, and the loss of salary, loss of shelter, benefits and other terms, privileges and conditions of their residency for which Defendants are liable.

122. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages, and Plaintiffs' reasonable attorney fees, and costs.

123. By the actions and statements described above, Defendants have:

a. Denied housing or otherwise made housing unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

c. Made statements with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on sex, in violation of 42 U.S.C. § 3604(c); and

d. Coerced, intimidated, threatened, or interfered with a person in the exercise or enjoyment of, or on account of having exercised or enjoyed, rights granted or protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617.

**COUNT VI**
**R.C. 4112: Wrongful Discharge in Violation of Public Policy**
**(For Plaintiffs Josh Campbell and Meisha Osorio against Defendants Community Property Group Wapak Ltd., Brookstone Management Group Ltd., Douglas P. Larger, and Jennifer Stueve)**

124. All of the preceding paragraphs are realleged as if fully rewritten herein.

125. A clear public policy exists and is manifested in Ohio Revised Code Section 4112 prohibiting an employer from discriminating in the provision of housing and retaliating against an employee who opposes discrimination, sexual harassment, and a hostile work environment.

126. The public policy manifested in Chapter 4112 would be jeopardized if Defendants are permitted to retaliate against individuals by constructively terminating their employment for opposing such treatment.

127. Plaintiffs Campbell and Osorio's constructive terminations were motivated by conducted related to the public policy at issue here.

128. Defendants subjected Plaintiff A.M. to unlawful sexual harassment, and Plaintiffs Campbell and Osorio opposed this harassment.

129. As a result of Plaintiffs Campbell's and Osorio's opposition to the unlawful conduct, Defendants retaliated against Plaintiffs Campbell and Osorio.

130. Defendants lacked overriding legitimate business justification for their actions against Plaintiffs Campbell and Osorio.

131. As a result of Defendants' actions, Plaintiffs Campbell and Osorio, have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress, and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendants are liable.

132. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages, and Plaintiffs, Campbell and Osorio's reasonable attorney fees, and costs.

## COUNT VII
### Intentional Infliction of Emotional Distress
### (Plaintiffs Crystal Hegemier and A.M. Against All Defendants)

133.    All of the preceding paragraphs are realleged as if fully rewritten herein.

134.    Defendants intended to cause Plaintiffs Hegemier and A.M. serious emotional distress, and/or knew that their acts and omissions would result in serious emotional distress to Plaintiffs Hegemier and A.M.

135.    Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

136.    As a direct and proximate cause of Defendants' acts and/or omissions as set forth above, Plaintiffs Hegemier and A.M. have  suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

137.    Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages.

## COUNT VIII
### Negligent Infliction of Emotional Distress
### (Plaintiffs Crystal Hegemier and A.M. Against All Defendants)

138.    All of the preceding paragraphs are realleged as if fully rewritten herein.

139.    The Plaintiffs Hegemier and A.M. witnessed and/or experienced a real or impending danger or physical consequence to another or themselves.

140.    Defendants' acts or omissions negligently caused the dangerous incidents.

141.    As a direct and proximate cause of Defendants' acts and/or omissions as set forth above, Plaintiffs Hegemier and A.M. have suffered mental anguish that is seriously and/or reasonably foreseeable.

142.    Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages.

## COUNT IX
### (Defamation)
### (Plaintiff Josh Campbell Against All Defendants)

143.    All of the preceding paragraphs are realleged as if fully rewritten.

144.    Defendants have made false statements, without privilege, to the entire community.

145.    The words used in the statements import a charge of an indictable offense involving moral turpitude or infamous punishment, tend to injure Mr. Campbell in his trade or occupation, and subject Mr. Campbell to public hatred, ridicule, and contempt.

146.    The statements made by Defendants are defamatory per se and have caused harm to Mr. Campbell.

147.    As a direct and proximate result of the defamatory statements made by the Defendants, Mr. Campbell has suffered extensive damage to his reputation and shame, mortification, and injury and seeks damages in excess of $75,000, plus attorneys' fees and punitive damages.

Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN**
A Legal Professional Association

/s/ *Kyle T. Anderson*
Douglas J. Segerman (0064779)
Kyle T. Anderson (0097806)
1160 Dublin Road, Suite 400
Columbus, Ohio 43215
Ph: (614) 221-7663
Fax: (866) 345-4948
Email: *dsegerman@LNLattorneys.com*
Email: *kanderson@LNLattorneys.com*

/s/ David A. Goldstein
**DAVID A. GOLDSTEIN  (0064461)**
David A. Goldstein Co., L.P.A.
511 S. High Street, Suite 200
Columbus, OH 43215
(614) 222-1889
(614) 222-1899 (Fax)
dgoldstein@dgoldsteinlaw.com

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff hereby requests a jury of the maximum number of jurors permitted by law, but no less than eight (8) persons.

/s/ *Kyle T. Anderson*
Kyle T. Anderson (0097806)

22